

**SIGNED THIS 22nd day of February, 2019**

Rebecca B. Connelly
UNITED STATES BANKRUPTCY JUDGE

**THIS MEMORANDUM OPINION HAS BEEN ENTERED ON THE DOCKET. PLEASE SEE DOCKET FOR ENTRY DATE.**

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| In re:<br>RUNNYMEDE CAPITAL MANAGEMENT, INC.,<br>    Debtor. | Chapter 7<br><br>Case No. 17-61506 |
| W. STEPHEN SCOTT, TRUSTEE,<br>    Plaintiff,<br>    v.<br>SUNTRUST BANK, N.A.,<br>    Defendant. | <br><br>Adv. P. No. 18-06025 |

## MEMORANDUM OPINION

W. Stephen Scott (the "Trustee") is the chapter 7 trustee for Runnymede Capital Management, Inc. ("Runnymede"). On August 10, 2018, the Trustee filed a complaint against SunTrust Bank, N.A. ("SunTrust"), to avoid and recover certain transfers. ECF Doc. No. 1. SunTrust moved to dismiss the complaint as failing to state a claim on which relief can be granted and for failing to plead fraud with specificity pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b), respectively. ECF Doc. No. 9. The Trustee filed a response, and SunTrust filed a reply. ECF Doc. Nos. 12, 13. The Court held a hearing on the motion to dismiss on November 28, 2018, at which counsel for both the Trustee and SunTrust appeared and presented arguments in support

of their respective positions.  *See* ECF Doc. No. 14.  The Court took the matter under advisement. *See* ECF Doc. No. 15.

## JURISDICTION

The Court has jurisdiction over this bankruptcy case by virtue of the provisions of 28 U.S.C. §§ 1334(a) and 157(a), the delegation made to this Court by Order of Reference from the District Court entered on December 6, 1994, and Rule 3 of the Local Rules of the United States District Court for the Western District of Virginia.  Proceedings to determine, avoid, or recover fraudulent conveyances are "core" proceedings under 28 U.S.C. § 157(b)(2)(H).

## ANALYSIS

SunTrust moves to dismiss the complaint in its entirety because, it says, the Trustee failed to state a claim and failed to plead fraud with specificity.  SunTrust asks to dismiss the action under Federal Rule of Civil Procedure 12(b)(6), made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 7012(b), because according to SunTrust the complaint fails to plead facts alleging a critical element.  SunTrust also contends the Trustee has not pled fraud with requisite specificity.  And so, SunTrust also moves to dismiss the action pursuant to Federal Rule of Civil Procedure 9(b), made applicable to this proceeding under Federal Rule of Bankruptcy Procedure 7009.

**I.  Failure to State a Claim**

A motion under Rule 12(b)(6) looks into the legal sufficiency of a complaint.  *RTC Mortg. Tr. v. McMahon*, 225 B.R. 604, 607 (E.D. Va. 1997).  The merits of the claims or the defenses are not relevant.  The question is whether the plaintiff has pleaded "a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  More than that, the claim must have crossed "the line from conceivable to plausible."  *Id.*  The mere recital of elements of a cause

2

of action, supported only by conclusory statements, is not sufficient to survive a Rule 12(b)(6) motion. *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012).

In the complaint, the Trustee asserts two counts, based on sections 544(b)(1) and 550(a) of the Bankruptcy Code. In Count I, the Trustee asserts that he may avoid constructive fraudulent transfers pursuant to Virginia Code section 55-81. In Count II, the Trustee asserts he may avoid transfers made with the actual intent to defraud Mrs. Kinder pursuant to Virginia Code section 55-80. The Trustee alleges SunTrust benefitted from the transfers and alleges SunTrust had notice of Mr. Dandridge's and Runnymede's fraudulent intent to defraud Mrs. Kinder when it received the transfers. The Court will examine the Trustee's complaint to determine whether he has stated a claim under these sections.

### a. The Facts Alleged by the Trustee

For the purpose of the pending motion to dismiss, the Court will accept as true the following facts taken from the Trustee's complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The story begins with Lynne J. Kinder and the untimely death of her husband, Trey Kinder, a successful attorney and businessman.[1] Compl. ¶ 7. Mr. Kinder left behind his wife, his two small children, and assets and accounts worth approximately $6.5 million. *Id.* ¶ 10. Victor M. Dandridge, III, a childhood friend of Mr. Kinder, offered to provide investment management and advice to Mrs. Kinder and her family, both at the funeral and through a letter touting his skills and business contacts dated merely sixteen days after Mr. Kinder's death. *Id.* ¶¶ 8–9. Mrs. Kinder accepted the offer and authorized Mr. Dandridge to manage her family assets. *Id.* ¶ 10.

---

[1] Mrs. Kinder is the creditor who filed an involuntary bankruptcy petition against Runnymede Capital Management, Inc. on August 2, 2017. Having issued a summons on August 3, 2017, to which no party responded, the Court entered the order for relief on September 26, 2017.

Mr. Dandridge had a relationship with the Charlottesville offices and officers of SunTrust and its predecessor, Crestar Bank. *Id.* ¶ 11. SunTrust and Mr. Dandridge expanded the relationship after Mr. Dandridge began managing Mrs. Kinder's assets. *Id.* ¶ 12. SunTrust assigned Charles Du Bose to be the relationship banker to Mr. Dandridge. *Id*. SunTrust and Du Bose profited from the relationship. *Id.*

SunTrust knew Mr. Dandridge "derived income as an investment adviser," *id.* ¶ 47, and knew Mr. Dandridge "had no regular source of income," *id.* ¶ 48. SunTrust also knew or should have known that Mr. Dandridge "was not a licensed investment advisor at the time . . . nor was he employed by one," *id.* ¶ 49. SunTrust made loans and extensions of credit to Mr. Dandridge and his entities, all of which the Trustee outlines in his complaint.

On the heels of Mr. Kinder's death, Mr. Dandridge formed Runnymede on January 12, 2006, and made himself president. *Id.* ¶ 14. On the next day, Mr. Dandridge opened with SunTrust a deposit and checking account in the name of Runnymede Capital Management Inc. (referred to in the complaint as "Runnymede 6930"). Mr. Dandridge directed $1.4 million of Mrs. Kinder's funds to be deposited into this account by June 30, 2006. *Id.* ¶¶ 15–16. Two months later, in August 2006, SunTrust provided Mr. Dandridge and his wife, Ann Claiborne Dandridge, at least $500,000 for the purchase of a vacation home at 678 Springfield Road, Westmoreland County, Virginia. *Id.* ¶ 17. Shortly after that, in October 2006, SunTrust extended a revolving line of credit for $125,000 to Wycliffe Capital Management, Inc. ("Wycliffe"), a company owned by Mr. Dandridge and of which he was the president. *Id.* ¶ 18. Around that time, Mr. Dandridge opened with SunTrust a deposit and checking account for Wycliffe. *Id.* ¶ 19.

The relationship between SunTrust, Mr. Dandridge, and his companies continued to grow the following year, 2007. In that year, Mr. Dandridge and his wife formed what would become

4

Timberlake Lighting, Inc. ("Timberlake"),[2] a wholesale and retail lighting company with locations in Charlottesville and Lynchburg, Virginia. *Id.* ¶¶ 20–21. In July of 2007, SunTrust extended a revolving line of credit for $150,000 to Timberlake, which had also opened a deposit and checking account with SunTrust. *Id.* ¶¶ 24–25. At the same time of this extension of credit to Timberlake, SunTrust also permitted Mr. and Mrs. Dandridge to borrow $1,258,000 to either capitalize or purchase a business, most likely Timberlake. *Id.* ¶ 26. The accompanying Commercial Note granted SunTrust security interests in all deposits and investments of Mr. and Mrs. Dandridge at SunTrust. *Id.* ¶ 27.

Between January 1, 2009, and December 31, 2011, four categories of transfers occurred: (1) Mr. Dandridge transferred Mrs. Kinder's funds into the Runnymede account at SunTrust ($2,193,728.17); (2) Runnymede transferred $2,461,578.40 to Mr. Dandridge's personal account; (3) Runnymede transferred $782,000 to the Timberlake account; and (4) Runnymede transferred $51,116.12 to the Wycliffe account. *Id.* ¶¶ 28, 30–32. The transfers from Runnymede total $3,294,694.52, which the Complaint labels the "Runnymede Transfers Out." *Id.* ¶ 33. The transfers of Mrs. Kinder's assets into Runnymede created a debt from Runnymede to Mrs. Kinder. *Id.* ¶ 29. While Runnymede was indebted to Mrs. Kinder, Runnymede made the transfers to Mr. Dandridge, Timberlake and Wycliffe which "depleted the estate of Runnymede and left Runnymede with no or insufficient assets with which to pay the liabilities to Mrs. Kinder." *Id.* ¶ 34. When Runnymede transferred $2,461,578.40 to Mr. Dandridge's personal account, an interest in the funds passed to SunTrust. *Id.* ¶¶ 30, 35. The Trustee sums up these facts stating that (i) the Runnymede Transfers Out left Runnymede with no or insufficient assets to pay liabilities to its creditors; (ii) Mrs. Kinder was a creditor at the time of each transfer; (iii) title to

---

[2] Timberlake also has a bankruptcy case currently pending before this Court. *See Timberlake Lighting, Inc.*, Case No. 17-60318 (Bankr. W.D. Va.).

funds passed from Runnymede to SunTrust when they passed into Mr. Dandridge's personal account; (iv) the Runnymede Transfers Out occurred while Runnymede was insolvent or caused Runnymede to become insolvent; and (v) Runnymede did not receive consideration deemed valuable at law in exchange for the Runnymede Transfers Out. *Id.* ¶¶ 34–38. Transfers from Runnymede permitted SunTrust to benefit, receiving hundreds of thousands of dollars in payment of loans owed by Mr. Dandridge and his companies. *Id.* ¶ 39.[3]

The complaint also pleads facts alleging that all withdrawals or transfers out of Runnymede were in irregular amounts and occurred on the same date or within days or weeks of a corresponding transfer in of Mrs. Kinder's funds "precluding any appearance of a legitimate business or investment purpose for the Kinder Transfers In and Runnymede Transfers Out." *Id.* ¶¶ 55–56.

The Trustee describes facts showing fraud and deception. The complaint pleads that Runnymede made the transfers with an intent to defraud Mrs. Kinder while SunTrust was on notice of such intent and that certain facts should have prompted an investigation. *Id.* ¶¶ 41–42. The complaint describes that SunTrust and its agent, Mr. Du Bose, reviewed and knew the sources of income and other financial information of Mr. Dandridge and his companies. *See id.* ¶¶ 44–45. Specifically, SunTrust knew that Mr. Dandridge had no regular source of income and that Timberlake was making no money. *Id.* ¶¶ 48, 51. While acknowledging Mrs. Kinder's beneficial interest, SunTrust knew that Mrs. Kinder was the source of the transfers into the Runnymede account and knew that most of the Runnymede Transfers Out went to other entities indebted to the bank, mostly to Mr. Dandridge as his "income" but also to the companies he owned. *Id.* ¶¶ 44–

---

[3] Based on the facts as presented thus far, the Trustee seeks judgment against SunTrust for the Runnymede Transfers Out in the amount of $3,294,694.52 as constructive fraudulent transfers under Virginia Code section 55-81.

6

45. These facts show that Mr. Dandridge was using Mrs. Kinder's assets to pay his and his entities' debts to SunTrust, instead of investing or safeguarding Mrs. Kinder's savings. The Trustee pleads that these facts should have prompted SunTrust to investigate. The Trustee pleads based on these facts, that SunTrust was on notice of Mr. Dandridge and Runnymede's intent to defraud Mrs. Kinder. *Id.* ¶¶ 41–42.

SunTrust watched as funds from Mrs. Kinder came into the Runnymede account and then were rather quickly diverted for Mr. Dandridge's personal use. These diverted funds included $10,000 in monthly mortgage payments, tens of thousands of dollars in monthly credit card payments, thousands of dollars in car loan payments, and hundreds of thousands of dollars out in wire transfers. *Id.* ¶¶ 56–57. SunTrust knew or should have known that such activity out of the Runnymede account was not usual for the purported business purposes of Runnymede, particularly in light of the hundreds of thousands of dollars paid to SunTrust from these funds for the sole benefit of Mr. Dandridge and his companies, all indebted to SunTrust. *Id.* ¶¶ 58–59. SunTrust knew that these transfers were made when Mr. Dandridge has no regular source of income. *Id.* ¶ 48.

SunTrust knew that Mr. Dandridge's businesses were failing and yet knew that Runnymede directed transfers into these failing businesses. *Id.* ¶ 61. The Trustee pleads these facts placed SunTrust on notice of fraudulent intent. *See id.* Timberlake was operating at a loss each year, and yet Runnymede continued to pour money into Timberlake. *Id.* ¶¶ 62–63. Further, Mr. and Mrs. Dandridge were regularly in default under their Commercial Note to SunTrust and did not pay the note upon the maturity date, July 31, 2010. *Id.* ¶¶ 64–65. Although initially declining to extend or renew the terms of the Commercial Note, SunTrust agreed to do so solely if Mr. and Mrs.

Dandridge provided SunTrust with additional collateral and paid a $100,000 curtailment at closing and an additional $100,000 curtailment annually thereafter. *Id.* ¶¶ 66–67.

To meet SunTrust's request for additional collateral, Mr. Dandridge fraudulently induced Mrs. Kinder to put her own family home up as the additional collateral to secure the loan given by SunTrust. *Id.* ¶ 68. SunTrust accepted the additional collateral and did not ever discuss the status of the loan with Mrs. Kinder, who had just given SunTrust a security interest in her family home. *Id.* ¶ 69. To provide the curtailment at closing that SunTrust requested, Mr. Dandridge transferred $300,000 from the Runnymede account to his personal account, from which he forwarded funds to the closing attorney. *Id.* ¶ 70.

SunTrust watched as Mr. Dandridge transferred $371,382 from Mrs. Kinder's IRA and from her daughters' custodial accounts to Runnymede between September 14, 2011, and November 23, 2011. *Id.* ¶ 72. At Mr. Dandridge's request, SunTrust transferred in $190,578.40 of those funds into Mr. Dandridge's personal account and $194,000 into the Timberlake and Wycliffe accounts. *Id.* ¶¶ 73–74. Shortly thereafter, seemingly based upon review of these transfers, SunTrust informed Mr. Dandridge that it was terminating its deposit relationship with Mr. Dandridge, Runnymede, Timberlake, and Wycliffe, as well as its merchant services agreement with Timberlake. *Id.* ¶¶ 71, 76–77. This decision, which was reviewed by senior management at SunTrust, depleted the collateral pool for the Commercial Note. *Id.* ¶¶ 78–79. SunTrust's decision to terminate the deposit relationships with Mr. Dandridge, Runnymede, Timberlake, and Wycliffe indicate that the bank was aware of Mr. Dandridge's and Runnymede's charade, and yet SunTrust never reversed any transfer or notified Mrs. Kinder of what was happening, despite her beneficial interest in the accounts or her role in providing collateral. *See id.* ¶¶ 80–81. Indeed, SunTrust did

8

not demand full payment of the commercial loan, but continued to accept payments, eventually being paid in full by Mr. Dandridge and his companies. *Id.* ¶¶ 82–83.

Mr. Dandridge, subsequent to the termination by SunTrust, set up accounts at other banks and continued to repay SunTrust hundreds of thousands of dollars derived from the Runnymede Transfers Out. *See id.* ¶¶ 84–88. In the end, SunTrust continued accepting these funds aware, or at least on notice, of Mr. Dandridge's intent to use Runnymede to defraud Mrs. Kinder and her family, until SunTrust had been paid in full. *See id.* ¶¶ 89–90.[4]

### b. Bankruptcy Code Sections 544(b)(1) and 550(a)

A trustee may utilize sections 544(b)(1) and 550 of the Bankruptcy Code, together with applicable state avoidance law, to avoid certain transfers and recover property transferred (or the value thereof), respectively. Because section 550 provides for recovery of property or the value of such property "to the extent that a transfer is avoided under section 544," the Trustee in this adversary proceeding must first demonstrate all the elements of section 544 to state a claim. *See* 11 U.S.C. § 550(a). Section 544(b)(1) requires a trustee to demonstrate two key elements. Section 544(b)(1) provides, in pertinent part, that "the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title."[5] *Id.* § 544(b)(1). And so, in this case, the Trustee's complaint must demonstrate facts showing a "transfer," and that the transfer was of "an interest of the debtor in property."

---

[4] Based on these facts, the Trustee seeks to avoid the fraudulent Runnymede Transfers Out or grant judgment against SunTrust for the Runnymede Transfers Out in the amount of $3,294,694.52 as fraudulent transfers under Virginia Code section 55-80.

[5] Subsection (b)(1) also provides that a trustee may stand in the shoes of a creditor whose claim "is not allowable only under section 502(e) of this title." 11 U.S.C. § 544(b)(1). This provision is not applicable in the present action.

The parties do not dispute that the debtor in this case, Runnymede, had an interest in the property that was transferred. That is, when Mr. Dandridge put Mrs. Kinder's assets into the Runnymede account, the funds were in the possession and under the control of Runnymede through its owner and president, Mr. Dandridge. The major dispute in this motion to dismiss centers on whether a "transfer" occurred as that term is used in section 544(b)(1).

*i. Was there a transfer?*

A claim pursuant to section 544(b)(1) of the Bankruptcy Code begins with a "transfer." The point of contention between SunTrust and the Trustee is whether the conveyances of Mrs. Kinder's assets from Runnymede into various SunTrust accounts constitute "transfers" as that term is used in section 544(b)(1). SunTrust argues that the transactions described in the complaint do not qualify as "transfers" and thus the Trustee may not avoid the transactions described in the complaint. The Trustee disagrees. The Trustee maintains all of the Runnymede Transfers Out are avoidable transfers.

"Transfer" is a defined term in the Bankruptcy Code. Section 101(54) lays out four meanings of "transfer": "(A) the creation of a lien; (B) the retention of title as a security interest; (C) the foreclosure of a debtor's equity of redemption; or (D) each mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with—(i) property; or (ii) an interest in property." The Trustee argues this fourth definition fits squarely with the facts of this case. The Trustee alleges Mrs. Kinder's funds passed from the Runnymede account to SunTrust and accounts held by SunTrust.

The Court must answer two closely related yet distinct questions. First, in the context of this motion to dismiss, this Court must answer whether the transactions that caused money to be deposited into various SunTrust deposit accounts may constitute a "transfer" under the facts as

10

alleged in the complaint. Second, the Court must determine whether any other transactions as alleged in the complaint constitute "transfers" that may be avoidable by the Trustee and recovered from SunTrust.

### ii. The deposits into SunTrust accounts

SunTrust insists it is not a transferee of the deposits described in the complaint. SunTrust primarily relies upon the Fourth Circuit's ruling in *Ivey v. First Citizens Bank & Trust Co. (In re Whitley)*, 848 F.3d 205 (4th Cir. 2017), to argue that the transactions described in the complaint do not qualify as "transfers" for purposes of the Trustee's avoidance actions.

The *Ivey* decision involved an involuntary bankruptcy case filed by individual creditors of a debtor who had defrauded individuals, including friends and family, out of millions of dollars. The debtor orchestrated a Ponzi scheme under the guise of investing the money in a purchase order factoring contract business. *Id.* at 206. The chapter 7 trustee sought to avoid as fraudulent transfers certain deposits and wire transfers into the debtor's personal checking account held in his name at the bank. *Id.* The debtor "had used this account to deposit funds, receive wire transfers, and write checks as part of his fraudulent scheme in the two years preceding the filing of the involuntary bankruptcy petition." *Id.* The chapter 7 trustee argued "that certain deposits and wire transfers to [the debtor's] account, including personal and cashier's checks and wire transfers from [his] 'investors,' constituted transfers from [the debtor] to the [b]ank." *Id.* at 206–07. The chapter 7 trustee argued that these transfers "were made with the actual intent to hinder, delay, or defraud creditors, and that the transfers were therefore avoidable as fraudulent transfers under 11 U.S.C. § 548(a)(1)(A)." *Id.* at 207.

Ultimately, on appeal, the U.S. Court of Appeals for the Fourth Circuit found "that the deposits and wire transfers at issue [were] not § 101(54) 'transfers' from" the debtor to the bank.

11

Accordingly, the Fourth Circuit concluded that the chapter 7 trustee could not avoid the transactions at issue under § 548(a) and granted summary judgment for the bank "on this narrower ground." *Id.* at 210. The Fourth Circuit disposed of the matter, before even reaching whether the purported transfers were avoidable, based on "the significant threshold question of whether the transactions at issue [were] even transfers within the meaning of § 101(54)." *See id.* at 207.

Upon reviewing the case law, the Fourth Circuit was "persuaded . . . that the better interpretation of 'transfer' does not include a debtor's regular deposits into his own unrestricted checking account." *Id.* at 210. The Fourth Circuit emphasized that when Mr. Whitley (the debtor) made deposits and accepted wire transfers into his personal bank account, "he continued to possess, control, and have custody over those funds, which were freely withdrawable at his will." *Id.* The Fourth Circuit then summarized the limited scope of its holding:

> We express no opinion on whether other types of deposits, such as those made to restricted checking accounts, would constitute transfers under § 101(54). Our holding is limited to the narrow circumstances presented here: when a debtor deposits or receives a wire transfer of funds into his own unrestricted checking account in the regular course of business, he has not transferred those funds to the bank that operates the account. When the debtor is still free to access those funds at will, the requisite "disposing of" or "parting with" property has not occurred; there has not been a "transfer" within the meaning of § 101(54).

*Id.* Other Circuits have likewise recognized the concept that deposits into one's "own unrestricted checking account in the regular course of business" are not transfers to the depository institution holding that account. *See, e.g.*, *Meoli v. Huntington Nat'l Bank*, 848 F.3d 716, 724–25 (6th Cir. 2017) ("The Trustee cannot recover Cyberco's excess deposits (those deposits not applied to pay back debts to Huntington) under the Bankruptcy Code provision for recovery of avoidable transfers from 'transferees' because banks are not 'transferees' with respect to ordinary bank deposits."); *Universal Serv. Admin. Co. v. Post-Confirmation Comm. of Unsecured Creditors (In re Incomnet, Inc.)*, 463 F.3d 1067, 1074 (9th Cir. 2006) ("[T]he bank will initially take title over the depositor's

12

funds, but it will not have dominion over them because it has no discretion over the uses to which the depositor's money is to be put. Thus, the bank is not the transferee, but the conduit or agent for a general deposit."). The case law seems settled that a deposit in the ordinary course of one's business into one's unrestricted bank account is not a transfer to that bank.

If the Trustee only sought to avoid the debtor's deposits into its own unrestricted bank account held by SunTrust, then SunTrust's objection may be well taken. If it was acting as a mere depository institution, SunTrust may not be a "transferee" of the deposits. *See Ivey*, 848 F.3d at 210. But the Trustee's complaint alleges more. The Trustee sets forth facts in the complaint revealing that SunTrust was more than a mere depository institution. For example, the Trustee alleges: (1) SunTrust entered into a Commercial Note with Mr. Dandridge; (2) under the Commercial Note, SunTrust obtained a security interest in "all deposits and investments of" Mr. Dandridge; (3) SunTrust made loans to Mr. Dandridge's related entities, and those entities opened bank accounts with SunTrust; (4) Runnymede transferred Mrs. Kinder's funds to Mr. Dandridge's bank accounts; (5) an interest in the funds passed from Runnymede to SunTrust upon their deposit into Mr. Dandridge's bank account; (6) Runnymede transferred Mrs. Kinder's funds to Mr. Dandridge and also transferred her funds to his related entities' bank accounts at SunTrust while each entity was indebted to SunTrust; and (7) these funds were ultimately transferred to SunTrust for payment of SunTrust loans. These allegations illustrate more than transfers from Runnymede into its own unrestricted bank accounts at SunTrust.

### iii. Other transactions

The Trustee describes transfers deposited into a bank account in which SunTrust had a security interest. Additionally, the Trustee describes transfers to SunTrust for loan repayments. The complaint describes transactions in which Runnymede paid other parties' debts to SunTrust

13

with funds held for Mrs. Kinder. Throughout, the complaint details how Runnymede disposed of its funds.

Based on the foregoing, the Court concludes the Trustee has alleged facts sufficient to show "transfer[s] of an interest of the debtor in property." *See* 11 U.S.C. § 544(b)(1).

The question remains whether the transfers may be "voidable under applicable law by a creditor holding an unsecured claim." If the Trustee has sufficiently pled under Virginia Code sections 55-80 and 55-81, then the Trustee has stated a claim under section 544(b)(1) to avoid the transfer, and in turn, to recover from or impose liability upon the transferee under section 550(a).

### *c. Applicable State Law*

Once a plaintiff has shown the existence of a transfer of a debtor's interest in property, the plaintiff must demonstrate all the elements of the applicable law for avoidance of the specified transfers by an unsecured creditor of the debtor. Because the Court finds that the Trustee has sufficiently alleged the existence of a transfer of the debtor's interest in property, the Court now turns to whether the Trustee has sufficiently alleged a plausible claim under such applicable law. Specifically, the Court will look at whether the Trustee in the complaint has demonstrated that an unsecured creditor of the debtor could avoid the transfers pursuant to Virginia Code sections 55-80 and 55-81.

#### *i. Count I: Transfers Void Pursuant to Virginia Code Section 55-81*

"Every . . . transfer . . . which is not upon consideration deemed valuable in law . . . by an insolvent transferor, or by a transferor who is thereby rendered insolvent, shall be void as to creditors whose debts shall have been contracted at the time it was made . . . ." Va. Code § 55-81. "To avoid a transfer under [Virginia Code section 55-81], the plaintiff 'must demonstrate that (1) a transfer was made, (2) the transfer was not supported by consideration deemed valuable in law,

14

and (3) the transfer was done when the transferor was insolvent or the transfer rendered the transferor insolvent.'" *Callahan v. Osteen (In re Osteen)*, Civ. No. 13:12-cv-00023, 2012 WL 5194251, at \*6 (W.D. Va. Oct. 19, 2012) (quoting *Shaia v. Meyer (In re Meyer)*, 244 F.3d 352, 353 (4th Cir. 2001)). This means the Trustee must plead facts demonstrating that (1) Runnymede made transfers at a time when it was indebted to an unsecured creditor, (2) at this time it was insolvent or was rendered insolvent from the transfers, and (3) Runnymede did not receive consideration deemed valuable at law in return.

The Trustee pleads that Mr. Dandridge formed the debtor (Runnymede) shortly after Mr. Kinder's death and Mr. Dandridge's offer to manage his widow's inheritance. *Id.* ¶¶ 7–10, 14–16. The Trustee alleges how Mrs. Kinder's funds were deposited into the debtor, *id.* ¶¶ 16, 28, and further how funds were transferred out of the debtor, *id.* ¶¶ 30–32. The Trustee explains how Mrs. Kinder was a creditor of the debtor. *Id.* ¶ 29. The Trustee illustrates how the debtor was unable to pay Mrs. Kinder because it had transferred all or nearly all of its assets to Mr. and Mrs. Dandridge and their related entities. *Id.* ¶¶ 34, 37. The Trustee alleges facts showing that the debtor had no other source of income or no other assets to pay Mrs. Kinder. The Trustee alleges the debtor did not receive consideration for the transfers. *Id.* ¶ 38. The complaint shows how the transfers from the debtor were used to pay the debts of Mr. and Mrs. Dandridge and their entities and as such benefited Mr. and Mrs. Dandridge and their entities, and SunTrust to whom the debts were owed, but did not benefit the debtor. The complaint describes facts which show that Mr. and Mrs. Dandridge and their entities never repaid Runnymede, nor attempted to repay Runnymede, nor had the ability to repay Runnymede.

The Trustee describes a banking relationship between and among SunTrust, Mr. and Mrs. Dandridge, and Mr. Dandridge's entities. The Trustee pleads that Mr. Dandridge had a banking

15

relationship with SunTrust but that the banking relationship grew after Mr. Kinder died. The Trustee describes how, after Mr. Kinder's death and Mr. Dandridge's promise to Mrs. Kinder that he would manage her inheritance, Mr. Dandridge formed Runnymede and directed Mrs. Kinder's funds be deposited into an account at SunTrust. After that, SunTrust extended credit to Mr. and Mrs. Dandridge along with new entities created by Mr. Dandridge. The Trustee alleges that SunTrust had an interest in all of Mr. Dandridge's bank accounts and alleges that the transfers from the debtor went to Mr. Dandridge's bank account (in which SunTrust had an interest) and also to Timberlake and Wycliffe (controlled by Mr. Dandridge). The Trustee alleges the transfers from the debtor to Timberlake and Wycliffe and subsequently to SunTrust benefitted SunTrust but not the debtor.

The question for this Court at this juncture is whether the Trustee has pleaded the elements required under Virginia Code section 55-81 through facts that state a plausible cause of action. The Court concludes the Trustee has done so. The Trustee has pleaded facts showing (1) the existence of transfers, (2) not supported by consideration, and (3) made at a time when the transferor was insolvent or rendered insolvent. The Court finds the Trustee has adequately stated a plausible claim "under applicable law" pursuant to Bankruptcy Code section 544(b)(1). For the above reasons, this Court denies the motion to dismiss Count I for failure to state a claim.

### ii. Count II: Transfers Void Pursuant to Virginia Code Section 55-80

"Every . . . transfer of . . . any estate, real or personal, . . . with intent to delay, hinder or defraud creditors, purchasers or other persons of or from what they are or may be lawfully entitled to shall, as to such creditors, purchasers or other persons, their representatives or assigns, be void." Va. Code § 55-80. "A *prima facie* case [pursuant to Virginia Code section 55-80] may be established by demonstrating a single badge of fraud; insolvency in combination with other

circumstances may sufficiently show fraudulent intent as well." *Sterne Agee Grp., Inc. v. Robinson (In re Anderson & Strudwick, Inc.)*, Adv. P. No. 14-03175-KLP, 2015 WL 1651146, at *9 (Bankr. E.D. Va. 2015) (citing *Hyman v. Porter (In re Porter)*, 37 B.R. 56, 63 (Bankr. E.D. Va. 1984)).

The Trustee alleges facts revealing Mr. Dandridge's scam to deliberately deceive Mrs. Kinder. The Trustee alleges that SunTrust knew or should have known about the fraud. For example, the Trustee describes how SunTrust had a relationship with Mr. Dandridge before Mr. Kinder's death. The Trustee pleads that SunTrust had knowledge of Mr. Dandridge's sources of income and had knowledge of his financial information as well as the financial information of Mr. Dandridge's entities. The Trustee pleads how SunTrust extended credit to Mr. and Mrs. Dandridge after Mr. Kinder's death and after Mr. Dandridge promised to manage Mrs. Kinder's inheritance. The Trustee alleges a series of loans made to Mr. Dandridge and to entities Mr. Dandridge created and controlled after this time. The Trustee alleges facts pointing to how Mr. Dandridge created Runnymede to manage Mrs. Kinder's inheritance. The Trustee pleads that SunTrust knew or should have known the income and financial information of the entities Mr. Dandridge owned or controlled when it extended credit, when it processed transfers, and when it received payment.

The Trustee further alleges that Runnymede transferred Mrs. Kinder's inheritance to Mr. Dandridge's accounts at SunTrust and to Mr. Dandridge's entities' accounts at SunTrust. The Trustee pleads that SunTrust knew that the transfers from Runnymede went to pay Mr. Dandridge and his wife's debts to SunTrust and those of his entities. SunTrust knew Mr. Dandridge had little to no other source of income or assets from which to pay his and his entities' debts to SunTrust. Compl. ¶¶ 47–56. SunTrust knew that Mrs. Kinder was the source of the wire transfers from Runnymede to pay Mr. Dandridge and his entities' debts to SunTrust. *Id.* ¶ 52. SunTrust knew or had reason to know that no legitimate business or investment purpose existed for the Kinder

17

transfers to Runnymede and the Runnymede Transfers Out. *Id.* ¶¶ 56–59. SunTrust knew or should have known that Mrs. Kinder was fraudulently induced to use her family home as collateral for Mr. and Mrs. Dandridge's Commercial Note to SunTrust and was fraudulently induced to transfer funds from her IRA and her children's custodial accounts to Runnymede.

For purposes of a motion to dismiss under Rule 12(b)(6), the Court finds that the Trustee has alleged enough facts, if taken as true, to show that certain transfers undertaken by Mr. Dandridge on behalf of Runnymede described in the complaint were made with an actual intent to defraud Mrs. Kinder. Coupled with the Bankruptcy Code discussion above, the Court finds the Trustee has stated a plausible claim under Bankruptcy Code sections 544(b)(1) and 550(a) and Virginia Code section 55-80. Accordingly, this Court denies SunTrust's motion to dismiss Count II for failure to state a claim pursuant to Rule 12(b)(6).

The Court notes that at this stage it is not making any ruling on the veracity of the facts as alleged in the complaint or any determination of the amounts that may be recoverable from SunTrust. Furthermore, the Court makes no determination as to whether for certain transactions SunTrust may be an initial or subsequent transferee (and thus the Court makes no ruling on the existence or availability of affirmative defenses). *See* 11 U.S.C. § 550(a), (b). Without the benefit of the fact-finding process, the Court makes no factual findings as to the ultimate disposition of the pending adversary proceeding. The Court simply concludes that the Trustee has alleged facts in the complaint which taken as true state a plausible claim on its face as to the potential recovery of certain transfers pursuant to Bankruptcy Code sections 544(b)(1) and 550(a) and Virginia Code sections 55-80 and 55-81.

## II. Failure to Plead Fraud with Specificity

Related to the motion to dismiss for failure to state a claim, SunTrust argues that the Trustee has failed to plead the circumstances of the alleged fraud with the specificity required by Rule 9(b) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Rule 7009 of the Federal Rules of Bankruptcy Procedure. The Court disagrees. The Trustee alleges sufficient detail to put parties on notice of the alleged circumstances evidencing fraud.

Much of the Trustee's cause of action focuses on fraudulent intent. "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); *see also Hyman v. Porter*, 37 B.R. 56 (Bankr. E.D. Va. 1984) ("Because of the difficulty of establishing 'actual intent', evidence of fraud may be, and generally must be, circumstantial."). As described above, the Trustee sufficiently alleges circumstances (misrepresentation, insolvency, lack of legitimate business or investment purpose) demonstrating fraudulent intent.

Furthermore, the Court recognizes that the requirements of Rule 9(b) may be relaxed for certain third parties to the alleged fraudulent transactions, including a bankruptcy trustee. *See, e.g.*, *Arrowsmith v. Lemberg Law, LLC (In re Health Diagnostics Lab., Inc.)*, 571 B.R. 182, 196 (Bankr. E.D. Va. 2017) ("The heightened pleading standard under Civil Rule 9 for pleading fraud is not applicable to constructive fraudulent transfer claims under 11 U.S.C. § 548(a)(1)(B)."); *Forman v. Kelly Capital, LLC (In re Nat'l Serv. Indus., Inc.)*, Adv. No. 14-50377, 2015 WL 3827003, at *4 (Bankr. D. Del. June 19, 2015) ("This is because the trustee often does not have all the facts that the debtor in possession would have about the conduct of the parties pre-petition."); *Nisselson v. Softbank AM Corp. (In re MarketXT Holdings Corp.)*, 361 B.R. 369, 395 (Bankr. S.D.N.Y. 2007) ("[C]ourts take a more liberal view when examining allegations of actual fraud that are pled by a bankruptcy trustee in the context of a fraudulent conveyance, since 'a trustee is an outsider to the transaction who must plead fraud from second-hand knowledge.'" (quoting

19

*Picard v. Taylor (In re Park S. Secs., LLC)*, 326 B.R. 505, 517–18 (Bankr. S.D.N.Y. 2005))); *see also Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, 421 B.R. 626, 643 (Bankr. S.D.N.Y. 2009) ("[I]n the case of a trustee pleading from second-hand knowledge, allegations of circumstantial evidence are sufficient to establish fraudulent intent.").

Even without this exception, the Court finds that the Trustee has alleged enough facts to meet the fraud pleading standard in Rule 9(b). The Court is satisfied SunTrust "has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial" and that the Trustee has provided facts to support the allegations. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Accordingly, the Court denies the motion to dismiss under Rule 9(b).

For the above reasons, this Court denies the motion to dismiss Count II pursuant to Rule 9(b).

The Court will contemporaneously issue an Order consistent with the findings and ruling of this Memorandum Decision.

A copy of this Memorandum Opinion shall be provided to the Trustee, W Stephen Scott, P.O. Box 1312, Charlottesville, VA 22902; Counsel for the Trustee, John M. Ryan, Crowley, Liberatore, Ryan & Brogan, PC, 150 Boush Street, Ste. 300, Norfolk, VA 23510; Counsel for SunTrust, Timothy S. Baird, Kutak Rock LLP, 901 East Byrd St., Ste. 1000, Richmond, VA 23219; and Counsel for SunTrust, Peter J. Barrett, Kutak Rock LLP, 901 East Byrd St., Ste. 1000, Richmond, VA 23219.